IRVING, P.J.,
for the Court:
¶ 1. A Yazoo County jury convicted Julian Sims of gratification of lust, kidnapping, statutory rape, and sexual battery. The circuit court sentenced Sims as a habitual offender to fifteen years for the gratification-of-lust conviction, thirty years for the kidnapping conviction, thirty years for the statutory-rape conviction, and thirty years for the sexual-battery conviction, with all sentences to run concurrently and to be served in the custody of the Mississippi Department of Corrections. Sims filed a motion for a directed verdict, a motion for a judgment notwithstanding the verdict (JNOV), and a motion for a new trial. The circuit court denied all three motions. Feeling aggrieved, Sims appeals and argues that the circuit court erred in denying his motions because the evidence is insufficient to support the verdicts and the verdicts are against the overwhelming weight of the evidence.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. One day in October 2010, fourteen-year-old Sara[1] went to visit with Georgia May Carter, Diane Moore, and Lillian[2] at the house the three women shared. Sims, Moore’s boyfriend, was sitting on the front porch of the house that day. After Sara knocked on the front door, Sims told her to go in. She went in and called out to Carter and Lillian, but neither answered. She looked around to see if anyone was home, but no one was there. Sims came into the house and locked the door behind him. When Sara tried to leave, Sims told her that she was not going anywhere. Sims then grabbed her by her arm, pushed her over a chair, put a condom on, pulled down her underwear, and inserted his penis into her rectum. Sara told Sims to stop and attempted to push him off of her. After Sims finished assaulting her, he told Sara not to tell anyone, and she did not at that time.
¶ 4. Skylah Fanroy testified that on the day of the October incident, she and Sara were walking down the street together, and Sara said that she was going to see if Carter was home. Fanroy stated that Sara asked Sims if Carter was home, and he responded that she was. Sara then walked into the house, and Sims walked in behind her.
115. Carter testified that Sims had been living at the house with her and her granddaughter, Moore, for about two weeks before he was arrested in December 2010, but he had been coming there to visit Moore for about two months prior to his arrest. Moore testified that Sims did not begin living or visiting with her at the house, where the October incident occurred, until November 2010. She also stated that when no one was there, they would lock the doors.
¶ 6. In December 2010, Sims approached Sara’s house while her younger brother, Jared, played outside. Sims, claiming that he had a toothache, asked Jared if Sara had any pain pills. Jared went inside and *310 told Sara that Sims was outside. When Sara went outside with Jared, Sims asked her for the pills, then asked her if she would walk him to the stop sign down the street. Sara told Sims that she did not know what he was talking about regarding the pills and would not walk with him to the stop sign. He then grabbed her by the hand and pulled her down the street and into an alley, with Jared following them. He told Jared to “watch his back.” Sims pulled out his penis, put Sara’s hand on it, and told her that he was going to get her pregnant. Sims starting kissing Sara on her mouth and neck. After Sims let her go, Sara and Jared went home. Jared told their mother what happened. Their mother called their father, who called the police. Sara testified that she did not tell anyone about the incidents because she was afraid for her life.
¶ 7. Jared’s testimony corroborated Sara’s testimony regarding the December incident. He added that, during the incident, Sims told Sara, “This [is] what you [are] gonna get.” He stated that Sara kept trying to pull away from Sims, but Sims held her hand tight.
¶ 8. Dr. Farhan Nafis examined Sara after the December incident. Dr. Nafis testified that he had performed a physical exam but not a pelvic exam because Sara did not complain of any pain or discomfort in her pelvic area. Dr. Nafis also stated that because the October incident had occurred two months prior to the examination, any evidence of trauma to Sara’s rectum would have healed by then.
¶ 9. Sims testified that the October incident never occurred. However, he stated that he did go to Sara’s house in December and asked Jared if Sara had any pain pills. After Jared told him that Sara was washing dishes, Sims began walking down the street. He stated that Sara called his name, walked toward him, and said that she had some pills, but not with her. Sims stated that he was “about to continue walking],” and that Sara “caught up with him ... at a little jog.” Sims knew that Jared was following them. He stated that Sara hugged him and told him that she had a tooth pulled. He claimed that he tried to console her by hugging her and that she “went in [his] pants and she grabbed [his] private part.” He testified that he did not stop her and that when he let her go, she pulled her hands out of his pants.
¶ 10. Additional facts, as necessary, will be related in the analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

I. Sufficiency of the Evidence

¶ 11. Sims argues that the circuit court erred in denying his motion for a directed verdict made at the conclusion of the evidence and his motion for a JNOV. The Mississippi Supreme Court has stated that
in the face of a motion for [a] directed verdict or for [a] judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test[,] it is insufficient to support a conviction.
Bush v. State, 895 So.2d 886, 843 (¶16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)) (internal quotation marks omitted). The supreme court went on to say that
this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt *311 beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)) (internal quotation marks omitted). When the evidence points “in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,” the judgment must be reversed and rendered. Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)).
¶ 12. Sims claims that the State’s only evidence of the October incident was Sara’s testimony and that there was no physical evidence that the October incident or the December incident had occurred. Sims further argues that Jared’s testimony regarding the December incident is not reliable because it is inconsistent with Jared’s statement to the police and because Jared’s vantage point of the incident was “not ideal.”

A. Statutory Rape

¶ 13. Sims claims that because there is no physical evidence that the October incident occurred, his statutory-rape conviction is based on insufficient evidence. Mississippi Code Annotated section 97-3-65(l)(a) (Supp.2013) states:
The crime of statutory rape is committed when [a]ny person seventeen (17) years of age or older has sexual intercourse with a child who: (i)[i]s at least fourteen (14) but under sixteen (16) years of age; (ii)[i]s thirty-six (36) or more months younger than the person; and (iii)[i]s not the person’s spouse.
Sara, who was not Sims’s wife, was fourteen years of age, and Sims was twenty-six years of age at the time of the October incident.
¶ 14. Sara’s testimony alone is sufficient to support Sims’s statutory-rape conviction. “[A]ny questions regarding the credibility of [Sara’s] testimony [are] to be resolved by the jury.” Stevenson v. State, 13 So.3d 314, 319 (¶26) (Miss.Ct. App.2008) (quoting Price v. State, 898 So.2d 641, 652 (¶25) (Miss.2005)). Sara stated that Sims inserted his penis into her rectum. Although Sims insists that Sara’s testimony is insufficient because there is no physical evidence of the incident, “the absence of physical evidence does not negate a conviction where there is testimonial evidence.” Williams v. State, 879 So.2d 1126, 1128 (¶ 5) (Miss.Ct.App.2004) (quoting Graham v. State, 812 So.2d 1150, 1153 (¶ 9) (Miss.Ct.App.2002)). Accordingly, there is sufficient evidence to support Sims’s statutory-rape conviction.

B. Sexual Battery

¶ 15. As with his statutory-rape argument, Sims insists that because there is no physical evidence and a lack of corroborating witnesses, the evidence is insufficient to support his sexual-battery conviction. Mississippi Code Annotated section 97-3-95(l)(c) (Rev.2006) defines sexual battery as an act where a person “engages in sexual penetration with ... [a] child at least fourteen (14) but under sixteen (16) years of age, if the person is thirty-six (36) or more months older than the child[.]” The definition of sexual penetration includes the insertion of one person’s penis into another’s anus. See Miss.Code Ann. § 97-3-97(a) (Rev.2006). As stated, Sara was fourteen years old at the time of the incident, while Sims was twenty-six years old. Sara testified that Sims inserted his penis into her rectum. As we have already noted, Sara’s testimony alone is sufficient to support Sims’s conviction for sex *312 ual battery, notwithstanding the lack of physical evidence. Thus, we find that there is sufficient evidence to sustain Sims’s sexual-battery conviction.

C. Gratification of Lust

¶ 16. Sims’s gratification-of-lust conviction arises from the December incident. Mississippi Code Annotated section 97-5-23(1) (Rev.2006) provides that:
Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch[,] or rub with hands or any part of his or her body or any member thereof, any child under the age of sixteen (16) years, with or without the child’s consent ... shall be guilty of a felony[J
Sims admitted that he was twenty-six years old at the time of the December incident. Sara testified that she was fourteen years old at that time. Although Sims insisted that he did not force Sara to touch his penis, he admitted that he did not do anything to stop her.
¶ 17. Our supreme court has held that the testimony of a single[,] uncorroborated witness is sufficient to sustain a conviction even though there may be more than one person testifying to the contrary.... The unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence!.]
Derouen v. State, 994 So.2d 748, 752 (¶ 9) (Miss.2008) (internal citations and quotation marks omitted). Jared corroborated Sara’s testimony at trial, stating that Sims forced Sara to touch Sims’s penis. Sims claims that Jared did not mention in his statement to the police that Sims asked for pain pills or pulled Sara down the street. However, Jared’s statement to the police did not conflict with his or Sara’s trial testimony of the sexual contact between Sara and Sims. Additionally, Sims’s claim that Jared’s vantage point of the incident was not ideal is of no matter here because not only was Sara’s testimony alone sufficient evidence of the incident, Jared’s testimony corroborated Sara’s testimony. Therefore, we find that the jury had sufficient evidence to convict Sims of gratification of lust.

D. Kidnapping

¶ 18. Sims’s kidnapping conviction arises from the October incident. Sara testified that Sims held her in the house against her will before he raped her. Mississippi Code Annotated Section 97-3-53 (Supp.2013) states:
Any person who, without lawful authority and with or without intent to secretly confine, shall forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be confined or imprisoned against his or her will, or without lawful authority shall forcibly seize, inveigle or kidnap any vulnerable person as defined in [Mississippi Code Annotated] Section 43-47-5 [ (Supp. 2013) ] or any child under the age of sixteen (16) years against the will of the parents or guardian or person having the lawful custody of the child, upon conviction, shall be imprisoned for life in the custody of the Department of Corrections if the punishment is so fixed by the jury in its verdict.
Although Sims denied that the October incident occurred, Sara testified that on the day of the incident, when she tried to leave the home after realizing that no one was inside, Sims locked the door, grabbed her by her arm, and told her that she was not going anywhere. Sims argues that Moore’s testimony — that the doors would always be locked when no one was home— corroborates his assertion that the incident *313 did not occur because Sara could not have entered the house. He further asserts that reasonable jurors could have reached a different conclusion. That may be true, but that is not the test for determining whether a motion for a JNOV was improperly denied. Even with Moore’s testimony, the evidence does not point in Sims’s favor with such force that reasonable men could not have found without a reasonable doubt that he was guilty of kidnapping. Therefore, we find that there is sufficient evidence to convict Sims of kidnapping.

II. Weight of the Evidence

¶ 19. “When reviewing [the] denial of a motion for a new trial based on an objection to the weight of the evidence, [appellate courts] will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18) (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)). The evidence is viewed in the light most favorable to the prosecution. Strahan v. State, 955 So.2d 968, 972 (¶ 11) (Miss.Ct.App.2007).
¶20. Sims insists that because there was no physical evidence and because the State relied only on Sara’s testimony, the verdicts are against the overwhelming weight of the evidence. However, “we do not find [that] the lack of physical evidence overwhelmingly weighs against the verdict[s].” James v. State, 86 So.3d 286, 297 (¶ 44) (Miss.Ct.App.2012). Physical evidence is not required to sustain Sims’s convictions of statutory rape, sexual battery, or gratification of lust. Additionally, although Sara’s testimony alone regarding the December incident is sufficient to support the verdict, we note that Jared corroborated Sara’s testimony. Further, Sims admitted that there was physical contact between him and Sara during the December incident, although his version of what occurred differed from hers. Regarding the kidnapping conviction, the jury’s determination that Sims was guilty of kidnapping was based primarily on Sara’s testimony of the October incident, and “[t]he jury is the sole judge of the weight of the evidence[.]” Lenard v. State, 77 So.3d 530, 539 (¶ 37) (Miss.Ct. App.2011) (quoting Nix v. State, 8 So.3d 141, 146 (¶ 26) (Miss.2009)). Based on these facts, we cannot say that the jury’s verdicts finding Sims guilty of statutory rape, sexual battery, gratification of lust, and kidnapping are against the overwhelming weight of the evidence or that allowing them to stand would sanction an unconscionable injustice.
¶ 21. THE JUDGMENT OF THE YA-ZOO COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, GRATIFICATION OF LUST, AND SENTENCE AS A HABITUAL OFFENDER OF THIRTY YEARS; COUNT II, KIDNAPPING, AND SENTENCE AS A HABITUAL OFFENDER OF THIRTY YEARS; COUNT III, STATUTORY RAPE, AND SENTENCE AS A HABITUAL OFFENDER OF THIRTY YEARS; AND COUNT IV, SEXUAL BATTERY, AND SENTENCE AS A HABITUAL OFFENDER TO THIRTY YEARS, WITH ALL SENTENCES TO RUN CONCURRENTLY AND TO BE SERVED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO YAZOO COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.

. To protect the identity of minor victims of sexual abuse, we substitute fictitious names for the victim and close relatives of the victim.

. The record does not refer to Lillian by her full name.