GRIFFIS, P.J.,
for the Court:
¶ 1. Sedrick Joiner appeals his sexual-battery conviction. He argues that the verdict was against the overwhelming weight of the evidence. We find no error and affirm.
FACTS
¶ 2. On July 30, 2011, eleven-year-old Lucy visited her grandmother, Ellie, in Marks, Mississippi.[1] Lucy’s nine-year-old cousin, Tammy, was also present. Ellie is Tammy’s aunt.
¶ 3. While at Elbe’s house, Lucy and Joiner spoke on the phone and arranged to meet at the railroad tracks. Joiner is Lucy’s cousin and Tammy’s uncle. Lucy and Tammy went for a walk and met Joiner. They got into Joiner’s car.
¶ 4. Lucy and Tammy both testified to several facts. Joiner picked them up at the railroad tracks. Tammy got in the front passenger seat, and Lucy got in the back seat. Joiner drove them to a nearby wooded area. Joiner then got in the back seat with Lucy, and they had sex. Afterward, Joiner got back in the driver’s seat. Tammy got in the back seat, and Lucy got in the front passenger seat. Joiner dropped them back off at the railroad tracks. Lucy and Tammy walked back to Elite’s house. They did not discuss what had just happened.
*759 ¶ 5. Their testimony differs on other facts. Lucy testified that Joiner called her at Ellie’s house and told her to meet him at the railroad tracks. Lucy testified that Joiner drove a red two-door car. Joiner got in the back seat with Lucy, and he pulled her boxers and panties down. He unzipped his pants and stuck his penis inside of her. She testified that this hurt her. She also testified that Joiner ejaculated on the seat and wiped himself off with a towel. Lucy threw away her boxers and panties the next day.
¶ 6. Tammy testified that Lucy called Joiner from Ellie’s house just before they met him at the railroad tracks. Tammy testified that while Joiner was in the back seat with Lucy, Tammy stayed in the front seat. Tammy turned around to get Lucy’s cell phone to play a game. Tammy saw Lucy lying on the back seat with her head against the window. Joiner was on top of Lucy. Tammy was asked on direct examination what happened when Joiner stopped the car. She testified that Joiner “got in the back and pulled down his pants and she [ (Tammy) ] pulled down hers and they started humping in the back seat.” She was then asked if she turned around and saw this, and she answered, “No.” When asked how she knew this was happening, Tammy stated, “Because she had gave me her phone.” Tammy testified that she did not hear any noise from Joiner and Lucy. She also did not know how long Joiner and Lucy were in the back seat together. On cross-examination, however, Tammy testified that she did not actually see Lucy with her boxers and panties pulled down. Tammy stated that she never saw any towel in the car. Tammy saw Lucy and Joiner kiss twice before he dropped them back off at the railroad tracks. Later that afternoon, Tammy told her Uncle Billy what had happened between Joiner and Lucy.
¶ 7. The -next day, Lucy’s mother took Lucy to the hospital for an evaluation. Tony McMillan, a registered nurse, examined Lucy. McMillan testified that there were no signs of bleeding, bruising, or tearing on Lucy’s body. Lucy told McMillan that she had not bathed since the incident occurred. McMillan testified that Lucy’s hymen was no longer intact, and there were possible reasons, other than intercourse, that would explain this. No evidence was found on Lucy’s body that could be collected for a rape kit.
¶ 8. Lucy and Tammy spoke with Detective Darryl Linzy of the Quitman County Sheriffs Department. Detective Linzy photographed the area where Joiner took Lucy and Tammy.
¶ 9. On January 23, 2012, Joiner was indicted for sexual battery, a violation of Mississippi Code Annotated section 97-3-95(1)(d) (Rev.2006). Joiner’s trial was held on March 14, 2013. Joiner moved for a directed verdict, which the trial court denied. The jury then convicted him of sexual battery. The trial court sentenced Joiner to serve thirty years in the custody of the Mississippi Department of Corrections (“MDOC”). He was also ordered to register as a sex offender once released from the MDOC’s custody.
¶ 10. Joiner filed a motion for a judgment notwithstanding the verdict, or in the alternative, a new trial. The trial court denied Joiner’s motion.
ANALYSIS
¶ 11. Joiner argues that he should have been granted a new trial. He asserts that there was no corroborating physical evidence to support the sexual-battery claims and very little police investigation.
¶ 12. Joiner offers the following to support his argument that there was no corroborating physical evidence. Lucy told *760 Detective Linzy that the person who had sex with her had a tattoo of a dog on him. Detective Linzy never saw a dog tattoo on Joiner. Lucy’s hymen was no longer intact. McMillan testified that there were possible reasons, other than intercourse, that would explain this. Lucy testified that Joiner wiped himself off with a towel after he finished having sex with her. Tammy never saw any towel while she was in the car. If there was no towel present, Joiner contends, he would have left some DNA evidence in the back of the car. And Tammy’s testimony was not corroborated with physical evidence. She testified that Lucy called Joiner on her cell phone before the girls met up with Joiner. However, Tammy did not tell the police officers this information when she was first interviewed. Detective Linzy testified that had he been informed about the cell-phone call, he would have retrieved cell-phone records.
¶ 18. Joiner offers the following to support his argument that there was very little police investigation. There were no follow-up interviews with any witnesses. Detective Linzy stated that he never saw a dog tattoo on Joiner, nor did he look for one. Detective Linzy never tested for DNA in Joiner’s car. Detective Linzy also never retrieved any cell-phone records.
¶ 14. When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, this Court “will only disturb [the] verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). This Court must consider the evidence in the light most favorable to the verdict. Id. We do “not have the task of re-weighing the facts in each case to, in effect, go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible.” Langston v. State, 791 So.2d 273, 280 (¶ 14) (Miss.Ct.App.2001).
¶ 15. In Sims v. State, 127 So.3d 307, 311 (¶ 13) (Miss.Ct.App.2013), Sims claimed that because there was no physical evidence that the incident occurred, his statutory-rape conviction was based on insufficient evidence. This Court found that there was sufficient evidence to support Sims’s conviction. Id. at (¶ 14). This Court stated:
Sara’s testimony alone is sufficient to support Sims’s statutory-rape conviction. “Any questions regarding the credibility of Sara’s testimony are to be resolved by the jury.” Stevenson v. State, 13 So.3d 314, 319 (¶ 26) (Miss.Ct.App.2008) (quoting Price v. State, 898 So.2d 641, 652 (¶ 25) (Miss.2005)). Sara stated that Sims inserted his penis into her rectum. Although Sims insists that Sara’s testimony is insufficient because there is no physical evidence of the incident, “the absence of physical evidence does not negate a conviction where there is testimonial evidence.” Williams v. State, 879 So.2d 1126, 1128 (¶ 5) (Miss.Ct.App.2004) (quoting Graham v. State, 812 So.2d 1150, 1153 (¶ 9) (Miss.Ct.App.2002)).
Sims, 127 So.3d at 311 (¶ 14).
¶ 16. Here, Joiner was thirty-six years old, and Lucy was eleven years old. Section 97 — 3—95(1) (d) provides that “a person is guilty of sexual battery if he engages in sexual penetration with ... [a] child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child.”
¶ 17. Lucy testified that she met Joiner at the railroad tracks. She testified that Joiner pulled her pants down and stuck his penis inside of her. She testified that this hurt her. She also testified that she saw *761 him ejaculate. Lucy stated that Joiner had a towel with him. After they had sexual intercourse, Joiner dropped Lucy and Tammy at the railroad tracks. Tammy also testified to similar facts. There was sufficient evidence to establish that Joiner violated section 97-3-95(1)(d) when he engaged in sexual penetration with a child who is protected by the statute.
¶ 18. We do not find that the verdict was so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would sanction an unconscionable injustice. Accordingly, we find no error in the denial of the motion for a new trial. We therefore affirm.
¶ 19. THE JUDGMENT OF THE QUITMAN COUNTY CIRCUIT COURT OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO QUITMAN COUNTY.
LEE, C.J., IRVING, PJ.,'BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ„ CONCUR. CARLTON, J., CONCURS IN RESULT ONLY.

. Because of the nature of the charge, the names of those involved have been changed to protect their identities.